IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

GENE GAYLOR,

      Plaintiff,

v.                            Case No. 2:10-cv-00258

GHASSAN Y. DAGHER, M.D.,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

On March 8, 2010, Plaintiff filed a Complaint alleging negligence and deliberate indifference to his serious medical needs by defendant Ghassan Y. Dagher, M.D. (hereinafter "Dr. Dagher" or "Defendant").  (Docket sheet document # 2).  This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Pending before the court is Defendant's Motion to Dismiss (# 10).

## PLAINTIFF'S ALLEGATIONS AND REQUEST FOR RELIEF

The Statement of Claim section of Plaintiff's section 1983 Complaint form states as follows:

> Doctor Dagher Reckless[ly, Willfully and Neglectfully Ignored and bypassed the guises and warnings of the Manufacture[r] of the Nidek YC -100 Opthalmic Yag Laser Device and the Food & Drug Administration (FDA) and with the aid of such Laser Device he destroyed the plaintiff's right eye.  (See Legal Claims Page 5 if the enclosed Complaint).

(# 2 at 4).  Attached to the Complaint form is a typed document entitled "Civil Complaint Pursuant to 42 U.S.C. § 1983." (<u>Id.</u> at 8-17).  The Complaint document alleges the following pertinent facts:

Dr. Dagher is an eye surgeon, with offices in Raleigh Memorial Hospital in Montgomery, West Virginia.  Plaintiff alleges that Dr. Dagher was acting under color of state law during the time in question, presumably because Dr. Dagher also treated inmates on-site at the medical department at the Mount Olive Correctional Complex ("MOCC").  (# 2 at 9).

Dr. Dagher diagnosed Plaintiff with cataracts on both eyes, and, on May 2, 2007, Plaintiff was transported to Dr. Dagher's offices to have the cataract removed from his right eye.  Plaintiff alleges that he was not told that a laser would be used on his eye, that he doesn't remember the surgery, and that the next thing he remembers is being in a room with a patch over his eye.  (<u>Id.</u> at 10).  Plaintiff states that a nurse told him to remove the patch the next day and that he would be able to see without his glasses. (<u>Id.</u>)

Plaintiff alleges that, within a few days after the surgery, he was seen by Dr. Dagher in the medical department at MOCC. Plaintiff alleges that, at that time, he told Dr. Dagher that he could not read, write, or type, and that his sight in his right eye was not clear and was "very cloudy or milky." (<u>Id.</u> at 10-11).  Dr.

2

Dagher allegedly told Plaintiff that he needed to give the eye time to heal.  (Id. at 11).

Plaintiff saw Dr. Dagher again on an unspecified date to be fitted for new glasses.  Dr. Dagher allegedly told Plaintiff that he would be able to see, read, write and type after he received the new glasses, approximately ten days later.  Plaintiff states that his vision did not improve when he received the new glasses.  (Id.)

Plaintiff next saw Dr. Dagher in March of 2008.  Plaintiff again told Dr. Dagher that something was wrong with his right eye.  Dr. Dagher allegedly agreed and told Plaintiff he "had more work to do on the eye."  Thus, a second surgical procedure was scheduled, which took place at Dr. Dagher's office on March 21, 2008.  (Id.)

Plaintiff alleges that, following the second laser surgery, his eyesight got worse.  Dr. Dagher again told Plaintiff that he must give the eye time to heal.  (Id.)  Plaintiff alleges that his eyesight got even worse and began to affect his ability to see with his left eye.  (Id.)

Upon Plaintiff's request, he was again seen by Dr. Dagher on or about April 2, 2008.  Plaintiff alleges that, after examining him, Dr. Dagher told him that he needed "immediate eye surgery by an eye surgeon specialist."  (Id. at 11-12).

On or about April 3, 2008, Plaintiff was transported to the offices of Dr. Robert F. Dundervill, III, in Charleston, West Virginia.  Dr. Dundervill examined Plaintiff's right eye.

According to the Complaint, Dr. Dundervill informed Plaintiff that he could perform two surgeries on his right eye.  Plaintiff states that Dr. Dundervill further informed him that the surgeries had a 61% success rate and, if the surgeries were successful, plaintiff could "see some, but that he would not be able to read the eye chart and would never ever be able to see to read, write or type with the damaged eye.  (Exhibit A, App. Pg. 1-7)." (<u>Id.</u> at 12).[1]

Dr. Dundervill's diagnosis letter states that Plaintiff has a "retinal detachment involving the macula in the right eye." (# 2, Ex. A).  Despite poor visual prognosis, Dr. Dundervill's letter indicates that, without surgery, the retinal detachment would worsen and Plaintiff would ultimately loss all vision in the right eye.  (<u>Id.</u>)

Plaintiff's Complaint alleges that he wanted to get a second opinion, and, thus, on or about April 4, 2008, he wrote Mary Westfall, the Health Services Administrator at MOCC, requesting the ability to obtain a second opinion from another eye surgeon qualified to make such diagnoses.  Plaintiff alleges that, as of the date of the filing of his Complaint, he had not obtained another opinion, and that he has not had the additional surgery.

---

[1]  Attached to the Complaint are four exhibits: A) Dr. Dundervill's diagnosis letter; B) USFDA Guidelines for Process Before Laser Surgery; C) testimony of doctors and others before the FDA; and D) an excerpt from a University of Cincinnati Law Review article.

(# 2 at 12).[2]

Plaintiff alleges that Dr. Dagher violated his rights under the Eighth Amendment to the United States Constitution through his "reckless, willfully, indifference [sic; indifferent], neglectful and incompetent infliction of cruel, unusual and inhuman harm upon plaintiff's body by destroying plaintiff's right eye that has and will cause plaintiff pain, humiliation, unbalance body when walking or even standing up, and other handicaps that will remain with him until death." (Id.)

Plaintiff further alleges that Dr. Dagher's conduct "bypassed" the guidelines and warnings of the manufacturer of the laser device and the Food & Drug Administration and caused irreversible damage to plaintiff's eye and overall health, which he believes will progress or worsen over time. (Id. at 13). Plaintiff further alleges that Dr. Dagher failed to take into account that Plaintiff was taking medications that could have affected whether he was a suitable candidate for laser surgery. (Id. at 14).

Thus, Plaintiff alleges that Dr. Dagher was deliberately indifferent to a serious medical need in violation of his Eighth Amendment rights, and also alleges that Dr. Dagher was "guilty of malpractice" or negligence. (Id.) Plaintiff seeks a declaratory judgment and compensatory and punitive damages. (Id. at 16).

_____

[2] As will be discussed infra, Plaintiff was examined by another doctor, Dr. Stephens, on March 11, 2010, who recommended that he not have additional surgery. (# 13 at 4).

## DEFENDANT'S MOTION TO DISMISS

On May 24, 2010, Dr. Dagher filed a Motion to Dismiss (# 10) and a Memorandum of Law in Support Thereof (# 12).  The Motion to Dismiss asserts:  (1) that Plaintiff's claims against Dr. Dagher should be dismissed as a matter of law because Plaintiff failed to comply with the pre-suit requirements of the Medical Professional Liability Act ("MPLA"), West Virginia Code § 55-7B-1 *et seq.*; (2) that Plaintiff's Complaint fails to state a claim upon which relief can be granted under the Eighth Amendment because Plaintiff cannot meet the two elements of the deliberate indifference test;  (3) Plaintiff's claims should be dismissed because he failed to exhaust available administrative remedies prior to filing suit;  (4) Plaintiff's claims as they pertain to his surgery on May 2, 2007 are barred by the applicable statute of limitations; and (5) Plaintiff failed to disclose other lawsuits pertaining to his incarceration and the facts involved in this civil action.  (# 10 at 1-2).

## STANDARD OF REVIEW

In <u>Bell Atlantic Corp v. Twombly</u>, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief

that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. at 555.

The Supreme Court further explained its holding in Twombly in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50. These principles will guide the undersigned's consideration of Plaintiff's claims for relief and Defendant's Motion to Dismiss.

## ANALYSIS

**A.    Plaintiff's Deliberate Indifference Claim.**

Defendant's Memorandum of Law describes Dr. Dagher as a private opthalmologist who saw Plaintiff as a patient while Plaintiff was incarcerated at MOCC.  (# 11 at 1).  Assuming that Dr. Dagher was "acting under color of state law" by serving as a medical provider to inmates at a State-operated correctional facility, in order to establish a violation of his Eighth Amendment rights, Plaintiff must demonstrate that Dr. Dagher acted with deliberate indifference to Plaintiff's serious medical needs.

In 1976, the Supreme Court set the standard for evaluating whether a prisoner's Eighth Amendment right to be free of cruel and unusual punishment was violated based upon a prison healthcare provider's deliberate indifference (subjective component) to the prisoner's serious medical needs (objective component).  Estelle v. Gamble, 429 U.S. 97 (1976).  Addressing the objective component first, "serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  Gaudreault v. Munic. of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1976)).

The subjective component of "deliberate indifference" sets a high bar to recovery. In Iko, a case involving excessive use of pepper spray by correctional officers, the Fourth Circuit wrote:

> An officer is deliberately indifferent only when he "knows of and disregards" the risk posed by the serious medical needs of the inmate. Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994). ***
>
> This court has identified two slightly different aspects of an official's state of mind that must be shown in order to satisfy the subjective component in this context. First, *actual knowledge of the risk of harm* to the inmate is required. Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001); *see also* Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the officer [] *should* have recognized it."). Beyond such knowledge, however, the officer must *also* have "recognized that *his actions were insufficient*" to mitigate the risk of harm to the inmate arising from his medical needs. Parrish, 372 F.3d at 303 (emphasis added).

535 F.3d at 241.

Defendant's Memorandum of Law contends that plaintiff fails to meet both the objective and subjective components of the test. (# 11 at 6). The Memorandum further states:

> Mr. Gaylor cannot meet the objective requirement with regard to Dr. Dagher because he does not allege that the doctor acted with deliberate indifference to the Plaintiff's needs. Nowhere in his Complaint does Inmate Gaylor advance an allegation that Dr. Dagher failed to identify a serious medical condition and then refused to act to correct it. In fact, the Complaint admits that Dr. Dagher *identified* his condition, i.e., the fact that he had a cataract, and alleges that Dr. Dagher treated that condition on May 2, 2007, using methods that were allegedly inappropriate, i.e., by using a laser. (See, Complaint at pp. 3-4.) The Plaintiff does not allege that Dr. Dagher refused to perform cataract surgery. Additionally, Plaintiff does not allege that Dr. Dagher refused to treat him after the cataract surgery.

9

Instead, he alleges that Dr. Dagher fitted him with new glasses, performed a second laser procedure and referred him to Robert F. Dundervill[], III, MD an "eye surgeon specialist" [FN 4] who recommended surgery. (Complaint at pp. 4-5). Plaintiff alleges in the Complaint that Plaintiff declined surgery recommended by Dr. Dundervill[] and requested a second opinion. [FN 5]. (Complaint at pg 5). Plaintiff cannot maintain a civil rights violation based upon his own refusal to have medical treatment. Plaintiff's allegations amount to a mere disagreement between the inmate and a physician about medical care and that is simply not sufficient to raise a cognizable claim under the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). The fact that Plaintiff ultimately was diagnosed as having a detached retina does not prove deliberate indifference. In fact, in Webster v. Jones, et al., 554 F.2d 1285 (1977), the Fourth Circuit rejected an inmate's claims that a general practitioner who examined him in prison for complaints of pain and loss of vision was deliberately indifferent even where the inmate ultimately was found to have a detached retina and iris. 554 F.2d at 1286. The Fourth Circuit noted, "Even if the doctor were negligent in examining Webster and in making an incorrect diagnosis, his failure to exercise sound professional judgment would not constitute deliberate indifference to serious medical needs." Id.

[FN 4 - Dr. Dundervill[] is actually a retina sub-specialist, that is, an opthalmologist with specialized training in the retina and other aspects of the back of the eye.]

[FN 5 - However, it is important to note that Plaintiff never alleges that he requested that Dr. Dagher refer him to a different sub-specialist for a second opinion.]

(Id. at 6-7).

Defendant further asserts that Plaintiff cannot establish the subjective component of the deliberate indifference test with regard to Dr. Dagher's conduct. Defendant's Memorandum states: "Mr. Gaylor does not allege that Dr. Dagher wantonly refused treatment of the Plaintiff, instead the Complaint alleges that Dr.

10

Dagher treated him improperly or performed surgery on him when he should not have done so.  His Complaint fails to allege that Dr. Dagher had actual knowledge of a serious condition and then acted wantonly or with reckless disregard.  See Rish v. Johnson, 131 F.3d 1092 (4th Cir. 1997)."  (Id. at 7-8).

On June 25, 2010, Plaintiff filed a Response to Defendant's Motion to Dismiss.  (# 13).  The Response addresses the deliberate indifference claim as follows:

> If Dr. Dagher failed to perform the proper test or failed to perform adequate health screening, it does amount to deliberate indifference.  Miltur [sic; Miltier] v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990).  Inmate of Occoquam [sic; Occoquan] v. Barry, 171 [sic; 717] F. Supp. 854, 867-68 (D.D.C. 1989).  Plaintiff was deprived of that right.
>
> Dr. Dagher displayed deliberate indifference when he by-passed the screening requirements.  If Doctor Dagher performed the proper screening he would have discovered the plaintiff was not a suitable candidate for eye surgery.  Plus, there were other reasons why plaintiff was not a suitable candidate (See pages 6-7 of plaintiff's original complaint).  Doctor Dagher could have prevented unrepairable damage obtained to plaintiff's right eye during the surgery.  Doctor Dagher's practice to not properly screen the plaintiff for eye surgery does amount to deliberate indifference.  The plaintiff will suffer mentally and physically for the rest of his life.

(Id. at 2-3).  Plaintiff further asserts that, during the second procedure on March 21, 2008, Dr. Dagher was looking at and talking to the correctional officers who transported Plaintiff to his office about his trip to Mexico, "instead of having his mind on the surgery he was performing."  (Id. at 3).

11

Plaintiff denies Defendant's assertion that he refused treatment after the second surgery. Plaintiff contends that Dr. Dundervill told him that, even with additional successful surgeries, he would not be able to read, write, or type, and that he would have to lay face down for two weeks after the first surgery. Plaintiff further contends that he has underlying medical conditions which will not allow him to lay face down and that, given the proposed negative repercussions of the additional surgeries, he wanted to get another opinion. (Id. at 3-4). Plaintiff's Memorandum further states:

> Moreover, on 3-11-10, the plaintiff visited Doctor Stephens who prescribe[d] prescription glasses. Doctor Stephens told the plaintiff he should not have any further surgery on his right eye. Doctor Stephens said more surgery would only cause the plaintiff unnecessary pain and suffering. Doctor Stephens said the plaintiff should concentrate on protecting his left eye. Plaintiff is presently following Doctor Stephens advise [sic; advice].

(Id. at 4).

On July 28, 2010, Defendant filed a Reply to Plaintiff's Response to the Motion to Dismiss (# 15). Defendant's Reply states:

> Even Plaintiff's representations in his response to Defendant's Motion to Dismiss further substantiate that his allegations against Defendant Dr. Dagher amount to nothing more than simple malpractice and do not constitute a claim of deliberate indifference. Based upon Plaintiff's own representations, essentially he is alleging that Dr. Dagher failed to properly examine and screen him, and performed what he now believes to have been the wrong surgery. Not only is this factually inaccurate, but it also does not state a claim for

12

deliberate indifference. By Plaintiff's own admissions, he received multiple examinations, surgeries, and the opinions of multiple eye doctors. [FN 1]. Further, Plaintiff misstates the holding of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). The Court in Miltier specifically found that "Mere negligence or malpractice does not violate the Eighth Amendment." Id. at p. 852. Additionally, the Court in Miltier held that "To establish that a healthcare provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. at p. 851.

[FN 1 - In addition to the examinations by Dr. Dagher and the retinal subspecialist, Dr. Dundervill, discussed in the Complaint, in his response to the Motion to Dismiss, Plaintiff admits he was seen by a third treater, Dr. Stephens.]

The facts in Miltier stand in direct contrast to the facts in inmate Gaylor's claims against Dr. Dagher. In Miltier, the plaintiff sued on behalf of her daughter's estate after her daughter complained repeatedly of chest pains and was never taken to see a cardiologist or to receive testing that would determine whether she had coronary artery disease or other cardiac conditions that required treatment. Id. at pp. 950-851. In Miltier, plaintiff contended that as a result of not receiving a referral to a cardiologist, her daughter suffered an acute heart attack and died. Id.

In contrast, in the case at bar, even just looking at the facts alleged in Plaintiff's Complaint, Plaintiff does not contend Dr. Dagher or the prison officials failed to send him out to the proper specialist for evaluation of his eye problems and treatment, instead, he repeatedly alleges that he was sent to various specialists, including Dr. Dagher, Dr. Dundervill, and now Dr. Stephens, for evaluation of his eyes. He contends that the specialist who examined him chose the wrong method of treatment. His allegations amount to nothing more than unsubstantiated claims of simple medical malpractice, and do not contain any allegations of actual intent or reckless disregard that would rise to the level of deliberate indifference. Thus, Plaintiff cannot state a claim of deliberate indifference under § 1983, and, as such, his claims against Dr. Dagher should

be dismissed.

(# 15 at 3-4).

On August 13, 2010, Plaintiff filed a sur-reply (# 16), without moving for leave to do so. Nevertheless, the undersigned has considered the sur-reply, which largely attempts to refute what Plaintiff describes as misstatements of his arguments made by Defendant. Plaintiff reiterates his argument that Dr. Dagher was deliberately indifferent to his serious medical needs when he "failed to conduct the proper pre-surgery examination and screening of the plaintiff's eye as mandated." (# 16 at 2). Plaintiff further states:

> If he had conducted such examination he would have discovered that the retina of the eye was to[o] thin and did give indication of chonicity problems. If this problem was discovered in pre-surgery examination then no laser surgery should have even been attempted. If Dr. Dagher has not taken a short cut and not deliberately by-passed the required pre-surgery examination and screening plaintiff would still have the sight of his right eye and would not have daily pain, suffering and handicaps.
>
> Contrary to defendant's counsel the plaintiff does not have the Lasik procedure and the Cataract procedure mixed up. Cataract surgery where the lens of the eye is replaced as Dr. Dagher did to the plaintiff's eye is closely related and the guidelines apply. In some cases the cataract surgery is more dangerous and compelling.

(Id. at 2-3).

Plaintiff's sur-reply further discusses his understanding of the method to assess the viability of candidates for laser surgery and questions whether Dr. Dagher should have attempted the surgery on Plaintiff. (Id. at 3). Plaintiff's sur-reply also emphasizes

14

that it was only Dr. Dagher who actually performed surgery on Plaintiff.  The other doctors who examined Plaintiff merely made diagnoses and recommendations for further treatment.  (Id.)

The burden of demonstrating deliberate indifference to a serious medical need by correctional officials and health care providers is very high.  It is well settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain.  See Farmer, 511 U.S. at 832-35; Sosebee v. Murphy, 797 F.2d 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

Rush v. VanDevander, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); Banks v. Green Rock Correctional Center Medical Dept., 2007 WL 2903673 (W.D. Va., Oct. 3, 2007).  For example, in Sosebee, the Fourth Circuit found that if prison guards were aware that a steak bone had pierced an inmate's esophagus, causing infection that resulted in the inmate's death, and the guards had intentionally abstained from seeking medical help, such conduct might establish deliberate indifference to a serious medical need.

In Webster v. Jones, 554 F.2d 1285 (4th Cir. 1977), the plaintiff, who had complained numerous times of eye problems and loss of vision, claimed that he was cursorily examined after his initial complaint, but never re-examined despite later complaints. The doctor claimed that he examined Webster several times, but never diagnosed a medical problem with his eye.  Id. at 1286.

15

Subsequently, a specialist found that Webster's vision had deteriorated to 20/400 and that he suffered from a detached retina and iritis, and that his vision could not be restored. <u>Id.</u> The Fourth Circuit found that, even if the doctor had been negligent in failing to properly diagnose or treat Webster, negligence is not sufficient to demonstrate deliberate indifference to a serious medical need and, thus, Webster's allegations did not constitute a cognizable constitutional claim. <u>See also</u>, <u>Johnson v. Quinones</u>, 145 F.3d 164, 168 (4th Cir. 1998).

Similarly, the allegations in Plaintiff's Complaint do not rise to the level of deliberate indifference. At most, Plaintiff's allegations amount to a claim of negligence, which is not cognizable under section 1983. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that, pursuant to <u>Twombly</u> and <u>Iqbal</u>, and taking the facts alleged in Plaintiff's Complaint and accompanying documents as true, the allegations concerning Plaintiff's medical treatment by Dr. Dagher fail to rise to the level of deliberate indifference to a serious medical need. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim upon which relief may be granted against Dr. Dagher on this basis.

**B.   Failure to comply with MPLA.**

West Virginia Code § 55-7B-6, which is part of the West Virginia Medical Professional Liability Act ("MPLA"), is entitled "Prerequisites for filing an action against a health care provider; procedures; sanctions."  It provides:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation.   The notice of claim shall include a statement of the theory or theories of the liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit.   The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death . . . .

W. Va. Code § 55-7B-6.

Defendant's Memorandum of Law asserts that Plaintiff failed to comply with these requirements before filing the instant Complaint. (# 11 at 2-4).  The Memorandum of Law further states:

> Plaintiff's primary allegations in the Complaint are that Dr. Dagher allegedly failed to follow proper procedures prior to performing "laser eye surgery" [FN 3] on him. While Plaintiff includes conclusory allegations in the

17

Complaint that his eighth amendment rights were violated, his complaint contains nothing more than a[n] improperly supported medical malpractice claim.  He includes a long list of alleged "guidelines" and "warnings" about "laser eye surgery" that he claims Dr. Dagher did not follow. (Complaint at pp. 6-7).  Plaintiff claims that Dr. Dagher was "reckless, willful and neglectful" because he did not conduct "a screening process," he did not describe expectations, risks and possible complications of LASIK with him, and did not examine him properly to determine if his cornea was too thin for LASIK. (Complaint a pg. 6).  Plaintiff alleges, "Dr. Dagher simply did not conduct the required examination, screening and evaluation of the plaintiff for a candidate for laser surgery and therefore, did not only violate plaintiff's constitutional right to be free of [sic] infliction of cruel, unusual and inhuman treatment but is guilty of malpractice as well . . . ."  (Complaint at pg. 7). Plaintiff characterizes his claim in several places as a "malpractice complaint."  (Complaint at pp. 1, 7, 10). Plaintiff's complaint constitutes a "medical professional liability action" and, as such, is governed by the MPLA.

[FN 3 - As noted above, Plaintiff seems to equate "laser eye surgery" with LASIK.   That is simply not true. Lasers are used in various opthalmic procedures, including YAG laser posterior capsulotomy, a procedure often done after cataract surgery.]

(Id. at 4-5).

Plaintiff's Response to the Motion to Dismiss addresses the

Defendant's MPLA argument as follows:

Defendant states this action should be dismissed because the plaintiff did not give prior notice of claim before filing the instant petition.   Moreover, the defendant claims this court does not have jurisdiction.

Title 42 U.S.C. § 1983, 28 U.S.C. [§] 1342, 28 U.S.C. [§] 1343, 28 U.S.C. [§] 2201, [§] 2202 and [28] U.S.C. [§] 1651 does not have such law, rule, or policy or requirement.  Therefore, defendant's claim is without merit.

If the defendant needs prior notice of claim, the plaintiff would not object if the court was to grant the

18

defendant the same time here and now that he would have had in prior notice.

(# 13 at 2).

Defendant's Reply asserts that Plaintiff "gives no legitimate reason for this Court to ignore the pre-suit notice requirements of the [MPLA] in this case." (# 15 at 1). Defendant further states that Plaintiff's reliance on several federal statutes does not remove the case from the MPLA's requirements and apply to actions brought in federal court. See Stanley v. United States, 321 F. Supp.2d 805, 808 (N.D. W. Va. 2004). (Id. at 1-2). The Reply further states:

> It would be insufficient, as suggested by Plaintiff in his response, for this Court to grant Defendant time following his receipt of this lawsuit because that would ignore the requirement that Plaintiff obtain and produce a screening certificate of merit executed under oath by a healthcare provider qualified as an expert indicating that the standard of care was breached and that such breach resulted in injury or death. West Virginia Code § 55-7B-6(b). Plaintiff has not produced any such screening certificate of merit[]. Furthermore, the [MPLA] is clear that such notice of claim and screening certificate of merit must be provided before the lawsuit is filed, not after filing. As such, it is appropriate to dismiss all of Plaintiff's claims for failure to comply with the [MPLA].

(Id. at 2).

Plaintiff's sur-reply discusses the Stanley case cited by Defendant in his argument concerning the application of the MPLA pre-filing requirements to Plaintiff's claims. Plaintiff asserts that Congress did not intend that the pre-filing requirements apply to the various federal statutes upon which Plaintiff relies in his

Complaint.  (# 16 at 1-2).

The undersigned finds it necessary to discuss the various statutes cited by Plaintiff in his Complaint.  In addition to section 1983, which is the vehicle through which Plaintiff's Eighth Amendment deliberate indifference claim must be addressed, Plaintiff cites sections 1342, 1343, 2201, 2202 and 1651 of Title 28.  Sections 1342 concerns rate orders of state agencies, and has absolutely no application to Plaintiff's claims.  Section 1343 conveys jurisdiction to the federal courts over civil rights cases filed pursuant to 42 U.S.C. § 1983, discussed above.

Sections 2201 and 2202 of Title 28 provide the federal courts with authority to grant declaratory judgments and other necessary and proper relief.  These statutes would come into play, only if Plaintiff can demonstrate a right to relief on his substantive claims.  Finally, section 1651 of Title 28, known as the "All Writs Act," conveys the federal courts with authority to grant "all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to usages and principles of law."  Plaintiff has not sought any relief that would be governed by this statute.

Accordingly, Plaintiff's argument that the MPLA is not authoritative over these statutes is irrelevant.  As will be further discussed below, the MPLA is applicable to Plaintiff's state-law based claim of negligence, to which the cited statutes have no application.

Plaintiff's Complaint clearly contains allegations that assert both claims of negligence and deliberate indifference to a serious medical need. Despite Defendant's assertions, the pre-filing requirements of the MPLA have no application to an inmate's alleged violation of his rights under the Eighth Amendment based upon a claim of deliberate indifference to a serious medical need, because state substantive and procedural law have no application in a cause of action based solely on a federal question. See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state"); Foreman v. FCI Beckley, Case No. 5:04-cv-01260, 2006 WL 4537211 (S.D. W. Va., Mar. 29, 2006)(Medical negligence claim brought under FTCA was dismissed for failure to comply with MPLA pre-filing requirements, but Bivens claim for deliberate indifference to serious medical need was not dismissed). Thus, Defendant's MPLA argument has no effect on Plaintiff's Eighth Amendment claim, which has been recommended for dismissal on its merits.

To the extent that Plaintiff has alleged a negligence or medical malpractice claim against Defendant, however, he is required to comply with the pre-filing provision of the MPLA. Accordingly, because Plaintiff failed to comply with those requirements, his negligence claim must be dismissed without prejudice. See Gray v. Mena, 625 S.E.2d 426 (W. Va. 2005)("Medical

professional liability includes "any tort based upon health care services rendered or which should have been rendered"); <u>Davis v. Mount View Health Care</u>, 640 S.E.2d 91 (W. Va. 2006)(dismissal without prejudice warranted where Plaintiff failed to comply with MPLA pre-filing requirements); <u>Motto v. Correctional Medical Services</u>, 2007 WL 2897866 (S.D. W. Va., Sept. 27, 2007)(MPLA requirements applied to medical malpractice claim, whether filed in state or federal court).  Plaintiff's request to be able to treat the Complaint as notice to Defendant of his claim will not suffice.

Thus, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff failed to comply with the pre-filing requirements of the MPLA, W. Va. Code § 55-7B-6; that, to the extent that Plaintiff's Complaint contains allegations of negligence against the Defendant, the negligence claim must be dismissed without prejudice for failure to comply with the pre-filing requirements of the MPLA.

The undersigned further notes that, because Plaintiff's negligence claim is a matter of state law, and both Plaintiff and Defendant appears to be citizens of the State of West Virginia, it appears that Plaintiff cannot meet the requirements for this Court's jurisdiction based upon diversity of citizenship.  <u>See</u> 28 U.S.C. § 1332.  Furthermore, because of the recommended dismissal of Plaintiff's deliberate indifference claim, the only federal clam stated in the Complaint, the Court cannot consider Plaintiff's

22

negligence claim under the Court's pendant or supplemental jurisdiction.

Thus, even if Plaintiff were to attempt to comply with the pre-suit requirements of the MPLA, any filing of a new Complaint against Defendant concerning a negligence or medical malpractice claim against Dr. Dagher must be filed in the Circuit Court of Fayette County, West Virginia.

**C.   Defendant's other arguments for dismissal.**

Defendant also moved to dismiss Plaintiff's Complaint on the bases that Plaintiff failed to exhaust available administrative remedies, that his allegations concerning his first surgery are barred by the applicable two-year statute of limitations, and that he failed to disclose other litigation concerning this same issue. In light of the previous proposed rulings, the undersigned finds it unnecessary to address these issues.

<u>**RECOMMENDATION**</u>

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendant's Motion to Dismiss (# 11), and dismiss this civil action from the docket of the Court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section

23

636(b)(1)(B), the Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Synder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties and Chief Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and counsel of record.

_____January 14, 2011_____
            Date

*Mary E. Stanley*

Mary E. Stanley
United States Magistrate Judge

24